Kent & Obear v. Allen.

The rule laid down by the Supreme Court of the United States in Boardman v. Reed's lessee is, " That if the land granted be so inadequately described as to render its identity wholly uncertain, it is admitted that the grant is void." (Boardman v. Reed's lessee, 328, 345; Evans v. Ashley, 8 Mo. 177, 184; Jackson v. Rosevelt, 13 J. R. 97; Jackson v. Delaney, 13 J. R. 557; Jackson v. Ransom, 18 J. R. 107; Wright v. Pond, 10 Conn. 255; Huntt v. Gistt, 2 Har. & J. 498; Worthington v. Hyles, 4 Mass. 196; Thomas v. Thomas, 6 T. R. 671.)

———◦◦◦◦———

KENT & OBEAR, Appellants, v. THOMAS ALLEN, Respondent.

*Deed.*—By a marriage contract, dated July 6, 1842, between W. R., the father of A. R., and A. R. with T. A., it was agreed that all property that said W. R. might give or convey to said A. R. or T. A., or to their use, and the

rents, issues and profits thereof, should be held and enjoyed in accordance with the terms of the conveyance or instrument of writing settling such property, except as in such contract afterward specially provided. It was further provided by the second article of said contract, that at any time during the marriage the parties to the contract might sell any of the property that might be conveyed by the said W. R. to the said T. A. or A. R., in accordance with the preceding stipulation, except where different provisions should be made by the deed of conveyance, in which case the provisions of the deed should control. The contract provided further, by article 4, that W. R. should purchase and settle upon his daughter A. R., to provide an annual income, productive real estate in the city of St. Louis, to be selected by him, in trust that the income should be paid to the said A. R., or her written order, during her natural life; and in case she should die leaving a child or children surviving her, then the payment to be made to such children until the youngest should attain the age of twenty-one years, at which time the fee should vest in such surviving child or children, &c. But if said A. R. should die without issue, then the absolute estate in said estate should revert to the said W. R. and his heirs. W. R. owning, at the time, a large amount of unproductive real estate, after the marriage, by deed of June 9, 1843, conveyed seven tracts of land in fulfilment of the purposes mentioned in the marriage contract to the said A. R., *to hold* to her sole use for life, and after her death to such of the children of said Ann as should attain twenty-one years of age, &c. But if the said A. R. died without issue, or issue attaining said age, then the title to revert to said W. R. or his heirs— the limitations prescribed by the deed following generally the stipulations of the contract for the purchase and settlement of income-producing property. Subsequently, W. R. purchased productive real estate, in complyance with the contract, and in satisfaction of the agreement to settle real estate producing income, and settled the same upon his daughter, and she, with her husband, acknowledged that the stipulations of the contract in that respect had been fully complied with. The plaintiffs, as agents for T. A., contracted for the sale of one of the pieces of land conveyed by W. R. to his daughter by their deed of June 9, 1843; and the said T. A. and wife, and the said W. R., joined in a conveyance to the purchaser, who refused to comply with his purchase, alleging that the deed tendered did not pass a good title in fee simple. Upon a suit by the plaintiffs against T. A., to recover the commissions due them for effecting a sale which fell through on account of a defect in the title, *held*, that by virtue of the marriage contract, and the deed of June 9, 1843, that the deed of W. R. and T. and A. A. to the purchaser, was a good and effective deed to pass the fee, and that the sale had not failed from any fault of the defendant.

*Appeal from St. Louis Circuit Court.*

*R. M. Field*, for appellants.

I. It is manifest that the court below, in finding that the land in question " was unproductive and could not be made

to produce enough to pay the taxes thereon," had reference to a renting by the year; for it is a sheer absurdity to say that forty acres of land lying in the heart of the city of St. Louis could not be made to produce an income above the public taxes by the grant of lease for a term of years.

II. The quality of the property as to productiveness is a test quite too vague and uncertain by which to determine the legal rights of the parties. These rights must depend on the plain, expressed limitations of estate contained in the conveyance.

III. The limitations in the deed of June 9, 1843, plainly conform to the fourth article of the marriage contract, and must be taken to be in pursuance of it. If any doubt could be suggested on this point, it will be removed by reading the deed of January 1, 1846. This last deed is manifestly a mere copy of the former, and is itself admitted to have been made in part satisfaction of that fourth article.

IV. The third deed read by the defendant is still more direct to the purpose. Adopting the limitations of the two former deeds, it contains a clause declaring that this " and the *deeds* before made" fully satisfy the agreement in the fourth and fifth articles of the marriage contract. Now the only deeds before made were that of January 1, 1846, and that of June 9, 1843, now in controversy. So that it is certain that the parties regarded the last mentioned deed as being made in pursuance of the fourth article of the marriage contract.

· V. But, supposing that the deed of June 9, 1843, was not made in pursuance of the fourth article of the marriage contract, still Russell and Allen and wife had no power to dispose of the land, for the deed contains limitations of estates to children and grand children over which the settler had reserved no power. The power reserved by the second article extends only to such estates as might be given by the settler to "Thomas and Ann, or either of them." It seems that, by the second article, Russell was providing for the case where he should give lands to the husband or wife, and the grantee should die leaving infant heirs. In such case, the surviving parent and Russell,

had the power by the second article to sell the land; but this power has plainly no application to the estate of the children under the limitations of the deed now in question. Supposing further, that the second article of the marriage contract extended to the lands conveyed by the deed of June 9, 1843; still the power conferred by that article was merely equitable in respect to the estates of the children and grand children. After the exercise of the power, the legal estate would still remain in the children, bound indeed by the equity of the purchaser.

The latter would be compelled to resort to a court of chancery to obtain the legal title.

It will be observed that the power is over estates already vested under a deed of bargain and sale, so that it amounts to a power to declare a use upon a use subsisting. The second use is a mere trust in equity. (1 Sugd. on Powers, 1.)

*S. T. Glover*, for respondent.

I. The motion to review merely asserts that, on the facts as found, the plaintiffs were entitled to a judgment.

It is conceded, therefore, that the facts were correctly found, and consideration of the evidence would seem to be out of the case.

II. It is admitted that if the property in question was not conveyed to Mr. Allen for the purposes contemplated in the fourth and fifth articles of the marriage contract, that then the parties thereto, to-wit, Russell and Mr. and Mrs. Allen, might sell it.

After this admission, the case would seem to be relieved of of all difficulty. What were the purposes for which property was to be conveyed under the fourth and fifth articles ? Why, Mr. Russell was to give her a support, and that support was to be guaranteed to her by the *future* purchase of property not then owned by Russell, which property was to be *improved* property, and was to be in value $20,000; and until this was done, certain interest was to be paid to her.

Now, the property in question here cannot be the property

contemplated by the fourth and fifth articles, for these reasons; because,

1. It was not purchased subsequently to the marriage articles.

2. It was owned by Mr. Russell at the date of, and prior to, the said articles.

3. The property in question was not improved property, as required by fourth and fifth articles. Whether it could be made productive is immaterial.

4. There are two conveyances in the record of property which Russell purchased afterwards, and which were of improved property, and which answered to the description of that required by articles fourth and fifth.

DRYDEN, Judge, delivered the opinion of the court.

Kent & Obear were real estate brokers in St. Louis, and were, in 1853, employed by Allen to sell for him, for not less than forty-one thousand dollars, a tract of forty-one acres of land in St. Louis county. They afterwards sold the land for the price limited to one Adolphus Meier. Afterwards, in due time, Allen, to consummate the sale, tendered to Meier a deed containing the usual covenants, duly executed and acknowledged by himself and wife, Ann R. Allen, and William Russell; but Meier refused to receive it, on the alleged ground that the grantors had no power to sell, and that the deed was ineffectual to pass to him the fee simple title, and thus ended the sale. Whereupon, Kent & Obear sued Allen for their services in the premises, charging that they did all they could to effect the sale, but failed in its accomplishment, and were prevented therein by reason only of the inability of Allen to make title.

The suit was brought and conducted to its termination under the practice act of 1849. The trial was had by the court without a jury. The following is the finding of the court, viz:

" The court finds the facts to be as follows: That the said Kent, in his life-time, and Obear were partners and real estate brokers in the city of St. Louis; as such, they undertook to

sell the land in question for the defendant; that there was no special agreement between the parties as to what should be paid the plaintiffs for their services; that they negotiated a sale with Adolphus Meier for said land, the terms thereof to be one-half cash and the other half in three equal payments, at one, two and three years, respectively; that the price to be paid by Meier was $41,000.

" The commission usually charged by real estate brokers at that time, where no special agreement for their services was made, was two and a half per cent. on the price at which the land is sold; but where the sale is not consummated, the broker receives nothing. If, however, the negotiations are made and the sale is not effected in consequence of a defective title, then the broker is entitled, by the usage, to the same commissions as if he had consummated the sale. The court further finds that in this case the defendant did, in due time after the negotiation aforesaid had been made by the plaintiffs for the defendant, tender to said Meier the following deed, offered in evidence; but the said Meier refused to complete the purchase, on the ground that he had been advised by counsel that the said deed would not pass the title in fee simple to him.

" The said deed is as follows." [Here follows a deed with covenants of warranty, &c., conveying to said Meier the said forty-one acres described in the petition. The deed was executed and duly acknowledged by Thomas Allen, Ann R. Allen his wife, and William Russell, and bears date September 1, 1853. The deed is not copied in the opinion because unnecessary to the decision of the case.]

" The following marriage contract and deed from Russell to Ann R. Allen, offered in evidence, are genuine, were duly executed by the parties thereto, as the same purport to have been, and were, duly recorded in the office of the recorder of St. Louis county." [Here follows said marriage contract and said deed. The marriage contract bears date July 6, 1842, and was executed by Thomas Allen, the then intended husband, Ann Russell, and William Russell. The first, second and

Kent & Obear v. Allen.

fourth articles of said contract are all that are necessary for the determination of the question arising in the case, and are as follows:]

"'ARTICLE FIRST—That all real estate, slaves, goods and chattels, and all property and effects whatsoever, by the said William Russell given, granted or conveyed, or which shall be given, granted or conveyed to the said Thomas and Ann, or either of them, or to their use, or the use of either of them as aforesaid, and the proceeds, rents, issues, and profits thereof, shall be held, used, enjoyed, and disposed of, according to the terms, clauses, stipulations, conditions, limitations, and reservations in the deeds, or writings, conveying the same respectively contained, touching the parties, or the tenure, use, and enjoyment of the said estate and property therein and thereby respectively conveyed, or conveyed, and not otherwise, except as hereinafterwards specially provided.

"'ARTICLE SECOND—That the parties hereunto (all concurring) may, at any time during the continuance of said marriage, or in case of the death of said husband or wife, the other surviving, such survivor and the said William Russell may sell, dispose of, grant, and convey any of the estate, property, and effects above mentioned or referred to, all the parties thereto, or in case of the death of either said husband or wife, the survivor of them and said Wm. Russell, joining in in such sale, or other disposition, and in the deed or conveyance thereof, and not otherwise, except where provision for such sale or disposition of any property is made in the deed, or writing, by which the same was conveyed to the said parties of the first and second part, or either of them as aforesaid, in which case such sale and disposition may either be made according to the terms of such deed or writing, or as in this article above provided.

"'ARTICLE FOURTH—That the said Wm. Russell intending to provide *further*, an annual income for said Ann, equal to the best lawful interest that can be had on $20,000 in money; to accomplish which purpose the said William Russell shall, and will, from time to time, as soon as in his opinion it may

7—VOL. XXXII.

be advantageously done, make investments of money in the purchase of productive real estate, to be selected by him within the county of St. Louis, amounting in the whole to $20,000; and upon such purchase being made, to make and execute such deeds, conveyances, assurances, and covenants as shall be good and sufficient in law to assure the fee simple estate in the property so purchased in trust or otherwise, and to secure the payment of the rents thereof, and the disposition of the estate in the manner following, that is to say: the payment of the rents, issues, and profits (after deducting taxes, and public charges, and necessary expenses of repairs,) semi-annually to said Ann, or to her written order, and to and for her sole and separate use during her natural life; and, in case said Ann shall die leaving a child or children surviving her, then such payment to be made to such child or children, until the youngest of them shall arrive at the age of twenty-one years; at which time, or sooner, if all the children of said Ann then living shall be of the age of twenty-one years or more, the fee simple in said estate shall be vested in such surviving child or children of said Ann, and the descendants of such (if any) as shall before them have departted this life, in the same manner as if the said Ann had died intestate seized in fee of said estate. In like manner, if said Ann shall depart this life leaving no child surviving her, but shall have a grand child or grand children so surviving her, then such payment to be made to such grand children of said Ann, until the youngest attain the age of twenty-one years, at which period, or sooner, after the death of said Ann, if all her grand children then living shall be of the age of twenty-one years or more, the estate shall be vested in them and their descendants as aforesaid. But if said Ann shall depart this life without leaving any children or grand children surviving her, as aforesaid, or those surviving her shall die before the happening of the contingency by which the fee simple would be vested in them according to the provisions of this article, then the absolute property in said estate shall revert to, and be vested in, said Wm. Russell and his heirs and assigns forever.'

" William Russell, by said deed above mentioned, dated June 9, 1843, conveyed to his said daughter, Ann R. Allen, seven tracts of land, of which the tract of forty-one acres in controversy was one. This deed purported to have been made ' in consideration of the parental affection and regard of him the said William Russell, for his said daughter, and his desire to promote and provide for her means of honorable support, and also in fulfilment of the purposes contemplated by a certain agreement, dated July 6, 1842, signed by Thomas Allen, Ann R. Russell, (now Ann R. Allen,) and William Russell, &c., which said agreement is hereby referred to as ·part and parel of this deed,' &c. The habendum is as follows : ' To have and to hold the above described seven tracts, pieces or parcels of land, amounting in all to about the quantity of one thousand and eighty-five acres of land, be the same more or less, together with all the improvements thereon, &c., to and for the sole and separate use of the said Ann R. Allen during her natural life, and for the above and other good and valuable considerations and inducements, and in accordance with the agreement aforesaid. This deed further witnesseth that from and after the time of the decease of the said Ann R. Allen, all and singular the above described seven tracts, pieces or parcels of land, with all the rights, privileges, and appurtenances thereunto belonging, are hereby given, granted, bargained, sold, and conveyed, by the said William Russell, in absolute property in fee simple, to such child or children of said Ann R. Allen, if any, as may have survived her, and have attained, or afterwards attain, the age of twenty-one years, in equal shares to each, if more than one of such children, and to the descendants, if any, of such of them as shall have before then departed this life, the same share which such deceased child of the said Ann (if alive) would have held in the land aforesaid under this claim, to have and to hold the the said seven tracts, pieces and parcels of land, with all the rights, privileges, and appurtenances thereunto belonging, from and after the decease of said Ann, to such child or children (if any) of her the said Ann R. Allen, and to the descen-

dants of such of them as may have before them departed this life as above provided, and to their heirs and assigns forever. No one of such children, or their descendants, shall claim, hold, or control the fee simple estate in the lands above conveyed until such child, or the descendants of such deceased child of the said Ann, shall have arrived at twenty-one years of age; but the share of such, with the incomes and profits thereof, shall be held and managed for the use of such minor by a trustee, to be appointed by the proper court having jurisdiction of such matters, until he or she, so being a minor, arrives at twenty-one years of age, when the fee simple of his or her share in said lands shall become absolutely vested in such child or children, or their descendants, of her the said Ann R. Allen. But if there be no child or children, or descendants of a child or children, of her the said Ann R. Allen surviving her, and who have attained or live to attain to the age of twenty-one years, in that case the title to all the aforesaid seven tracts, pieces or parcels of land, with all the rights, privileges and appurtenances thereunto belonging, shall revert to and become absolutely vested in fee simple in him the said William Russell, and his heirs and assigns forever.'

" It was admitted by the parties on the trial that, prior to, and at the date of, the marriage contract, and of the deed from Russell to Ann as aforesaid, the title in William Russell to the land in question was an indefeasible estate in fee simple.

" The court further finds that on the 9th day of June, 1843, all the property mentioned in the said deed of that date was unproductive, and did not and could not be made to produce enough to pay the taxes thereon; and the tract mentioned in the petition has continued ever since to be so unproductive.

" That, on the 27th of April, 1844, the said William Russell purchased of P. D. Tiffany, a lot of ground on Main street, in the city of St. Louis, which the said Tiffany and wife conveyed to said Russell in fee simple, by deed of April, 27, 1844; which said lot so purchased of said Tiffany the said Russell afterwards conveyed to said Ann R. Allen, by

deed of date January 1, 1846, which was duly acknowledged and recorded, and is in the words following." [Here follows the deed conveying the lot, with two storehouses thereon, to said Ann R. for life, as in case of the deed of June 9th, 1843, and on and for the same considerations expressed in that. Habendum precisely the same as in deed of June 9, 1843.]

" The said Russell also purchased of John Bell, John R. Shepley, and Mathew Kerr, a lot of land on the corner of Market and Fifth streets, St. Louis, which they conveyed to him in fee simple, by deed dated April 27, 1844, which lot the said Russell afterwards, by deed of date June 4, 1849, conveyed to said Ann R. Allen, which deed is as follows." [Here follows a deed for the lot on Market and Fifth streets to Thomas and Ann R. Allen, and to the survivor of them, for life, reciting same consideration as in former deeds, making the marriage contract part and parcel of it; same habendum as in deeds of June 9, 1843, and January 1, 1846. In this deed are the following recitals and averments, viz: "And, whereas, by the fourth and fifth articles of the agreement aforesaid (marriage contract) the said William Russell made certain promises and agreements to provide an annual income for the said Ann, equal to interest on $20,000 in money, and setting forth the manner in which such income might be secured and perpetuated by purchase of productive real estate in the county of St. Louis, amounting in the whole to the sum of $20,000, and to secure the payment of the rents and profits thereof to the said Ann; and that until such real estate shall be purchased and secured to said Ann for said purposes, the said William Russell shall pay interest on such part of said $20,000 as shall not be so invested, at the rate of ten per cent. per annum, payable semi-annually, &c. Now the said Ann R. Allen and Thomas Allen, Esq., her husband, hereby acknowledge and declare that the execution of this deed by the said William Russell, and the deeds heretofore made and delivered by him to the said Ann R. Allen, especially a deed dated January 1, 1846, and also by the said William Russell having paid the interest which he promised by said agreement

to pay to the said Ann up to the times of executing said deeds, fully and entirely satisfies and discharges all the promises and obligations of him the said William Russell, expressed or implied, contained in the fourth and fifth articles of the agreement above referred to ; and the said William Russell is hereby fully released therefrom, as having entirely fulfilled and performed all the obligations therein contained."]

" The court further finds that the failure of the plaintiffs to complete the sale with Meier was not caused by any failure or neglect on the part of the defendant to comply with the terms of the sale on his part, he having tendered the aforesaid deed to Meier; nor did he when he employed the plaintiffs to negotiate a sale of said land make any representations to the plaintiffs as to the fee simple owner of said land, or in whom the fee was, or what was the real title thereto.

" Conclusions of law on the above facts: 1. That the said deed, from William Russell, of June 9, 1843, was not in satisfaction, or part satisfaction, of the fourth article of the said marriage contract.

" 2. That the said deed tendered by the defendant to Meier was effectual to convey a good title to the land therein described.

" 3. That on the facts aforesaid, the plaintiffs are not entitled to recover, and judgment ought to be rendered for the defendant."

The finding and judgment being against the plaintiffs, they moved the court to review its decision ; but the motion was overruled, and they excepted and appealed.

The complaints urged by appellants in this court against the judgment of the Common Pleas is based upon the supposed insufficiency of the deed tendered to Meier to vest in him the fee simple title to the land in controversy. Upon the correctness or incorrectness of this assumption the case must turn. The court understands it to be conceded by the parties that if the deed was sufficient to pass the title it purported to convey, plaintiffs (appellants) are not entitled to recover ; because, without the fault of Allen, they have failed

Kent & Obear v. Allen.

to complete the work they engaged to perform, and upon the performance of which their compensation depended. On the other hand, if the deed was insufficient for this purpose, inasmuch as the plaintiffs did all they could in the performance of their undertaking, and were prevented from accomplishing it only by the fault of Allen, they ought to recover the value of their services.

Again: the sufficiency or insufficiency of the deed tendered depends upon whether the deed of 9th June, 1843, was made by Russell and accepted by Mrs. Allen with reference to the provisions of the first and second articles, or in satisfaction in whole or in part of the stipulations of the fourth article of the marriage contract. If, with reference to the first and second articles, then the deed tendered was sufficient to pass the title it purported to convey, but otherwise if under the fourth article.

Upon examination of the evidence on the point presented in the bill of exceptions, the court is disturbed by no doubt upon the question.

1. The obligation of the fourth article was to be discharged by the conveyance of *productive* property, and none other, thereafter to be purchased by Russell. The provisions of articles first and second would be satisfied by the conveyance as well of *unproductive* as productive property, as well of property *then* owned by Russell as of that he might thereafter acquire. The property in dispute was wholly unproductive, not after acquired, but owned by Russell at the time, and therefore in character fails to meet the requirements of the fourth article.

2. So, when we look to the end to be accomplished by the fourth article—" to provide an annual income for said Ann"— we find the conveyance, or the property conveyed, falling equally short of the mark. On the contrary, articles first and second had no sort of relation to " an annual income," or to the support of Mrs. Allen ; and the calls of these articles is well met by the conveyance under consideration.

3. Again: the inference drawn from the resemblance of

the trusts and limitations in the deed to those required by the fourth article—that this conveyance to Mrs. Allen was made by Russell in satisfaction of said article—is met by the consideration that if the deed was in fact intended as a compliance with articles first and second, power is thereby expressly given to sell and convey the property in fee or otherwise, no matter what the trusts or limitations imposed upon it by the deed.

The deed expressly adopts the marriage contract, and makes it part thereof, in all the provisions applicable to the deed as completely as if written out at length. Since, then, there is nothing in the case inconsistent, but every thing consistent with the hypothesis that the conveyance to Mrs. Allen of 9th June was intended to have operation under the first and second articles, and not under the fourth, it is the opinion of the court that the deed tendered to Meier, made under the powers reserved in said first and second articles, was sufficient in law to pass the title to the land in controversy in fee simple.

The other judges concurring, the judgment of the Common Pleas is therefore affirmed.