————O————

George K. Budd, *et al.*, Respondents, *vs.* Charles Zoller Appellant.

1. *Contracts—Commissions—Brokers.*—A. wishing to borrow money on some property applied to B., who agreed to find a lender, and to have the title examined, and would charge $200, which would include the expenses of examining *the title* and his commission ; A. gave B. his title deeds at the time. A defect being found in the title the lender refused to loan the money, and B. sued A. for the $200. *Held,* that B. should have first examined the title before applying for a loan, and was his agent for that purpose, as well as for procuring a loan, and was not entitled to his commissions.

Per Ewing and Wagner, Judges, dissenting.

2. *Contracts—Commissions—Brokers.*—A broker, employed to effect a loan, is entitled to his commission, when he has found a lender, who has the money and who approves of the security, unless his rights are varied by special contract. There is always an implied condition that the borrower will show a good title.

*Appeal from St. Louis Circuit Court.*

*Wm. J. Reed,* for Respondents.

Plaintiffs procured a party with the money in readiness and

willing to loan the same upon the property upon certain terms, to all of which defendant agreed, and delivered his title deeds to the agent of the lender for investigation. Here the undertaking of the brokers was accomplished and their commission earned. (Barnard vs. Monnot, Am. L. Reg., Vol. VI, 209; Bailey vs. Chapman, 41 Mo., 536.)

Vories, Judge, delivered the opinion of the court.

This action was brought before a Justice of the Peace and was founded upon the following account : Charles Zoller, Dr., to Budd, Son & Co., a firm composed of George K. Budd and Charles P. Budd. For commission on loan of $4000 (money obtained by said firm) commissions on same as per agreement 5 per cent., $200.

A trial was had before the Justice and judgment recovered by plaintiff. An appeal was taken to the St. Louis Circuit Court, where judgment was again rendered for plaintiff, which being affirmed by said court at general term, the defendant appealed to this court.

The case was tried in the Circuit Court at special term by the court, a jury having been waived by the parties. It is shown by the evidence of the plaintiff and witnesses given at the trial, that one E. W. Paul is a broker in the City of St. Louis; that he had learned that defendant desired to borrow some money ; that he called on the defendant, and that defendant told him that he wanted four thousand dollars, if he could get it on terms to suit him. Paul told him that he would charge him nine per cent. one off for commissions for making the loan. Paul asked defendant on what property he wanted it ? He stated that it was on the Montgomery House on Broadway. Paul then told defendant, that if he wanted the money he must go to Budd, and make the arrangement with him. Defendant told Paul that he would get the title papers and hand them to him. Paul afterwards got the papers for the purpose of having the examination of the title made. Paul told defendant, that he did not know who Budd had as an examiner ; told him to see Budd and he said he would do so.

Paul afterwards heard that Sterling had examined this title and reported it defective, and so told the defendant that Sterling had so reported, and told defendant that he could arrange it and that defendant said Sterling was mistaken. Witness thought defendant said he would fix it.

Paul told him to see Todd, that Todd would tell him; defendant said he would. On cross examination Paul stated that he had called on defendant at the market house to see him about the loan, that he told defendant that the arrangement would have to be made through Budd & Son, and referred defendant to them to make a bargain; that he had got the papers from defendant and handed them to plaintiffs, that he made no charge for commission; that he knew the Montgomery House; that defendant had been in possession of it for a long time; that the money never was loaned to the defendant.

Charles P. Budd was examined as a witness, and testified as follows: "I am one of the plaintiffs; our business is that of brokers, we procure loans for parties wishing to borrow. In May, 1869, E. W. Paul (last witness) informed us of an application for a loan from the defendant, that defendant wanted $4,000 for five years, and that he would give as a security, a deed of trust on the property known as the Montgomery House property, at the corner of Broadway and ——street. He handed us the title deeds for the purpose of having the title examined; Zoller, defendant, came to our office before we had the title investigated, and we had a conversation with him as to the terms on which we would procure the loan for him. I told him we would charge him two hundred dollars ($200.00) for procuring the loan for him. This was to include the expense of the examination and every thing. We were to pay the expenses of the examination of the title; Zoller agreed to this; the money to be loaned was not ours; we were acting as brokers. We applied to the Connecticut Life Insurance Company, and the company placed to our credit for the purpose of this loan, the sum of four thousand dollars. This was placed to our credit conditionally to be drawn upon by us only in the event Albert Todd, upon whose report alone the company would loan,

would report favorably as to the title. The property offered was ample security, if the title was free from defect. Mr. Todd reported a defect in the title, and would not give a certificate if that defect was not removed. We afterwards sent for Zoller and told him that Todd reported a discrepancy in the title, also told him that the defect would have to be fixed before he could get the money. He said that it was a mistake, that his title was good, and he would go and see Todd about it. The defect never was removed, the money ($4,000.00) was held by the company subject to our call for quite a while; but afterwards when it was apparent defendant would do nothing about the matter, the money was withdrawn. We did every thing we engaged to do. The Connecticut Mutual Life Insurance Company refused defendant the loan on account of the defect in the title; we had no interest in the money to be loaned.

The plaintiffs introduced oral evidence as well as abstracts of titles and a copy of a deed, all of which were objected to by the defendant, and his objections being overruled exceptions were taken. But said evidence need not be further noticed.

At the close of the evidence the court at the request of the plaintiffs gave a declaration of law declaring the law to be as follows:

The court declares the law to be, that if the defendant engaged the plaintiffs as brokers to procure for him a loan of $4,000.00 upon certain real estate, agreeing to pay plaintiffs a commission for procuring the same, and further, if plaintiffs procured a lender with the money in readiness, who approved of the sufficiency of the security, then plaintiffs are entitled to recover of defendant his agreed commission, although the lender upon examination of the titles found the same defective and refused therefore to consummate the loan.

The defendant objected to this declaration of law, when his objection was considered and overruled and he excepted. After the court had found for plaintiffs and rendered a judgment against defendant, he in due time filed a motion for a new trial, setting forth as causes therefor the opinions of the court excepted to, as well as all the other reasons usually set forth.—

16—VOL. LII.

The court overruled this motion, when defendant again excepted. The question which it seems from the record in this case controlled the parties and the court upon the trial, and which is involved in the declaration of law as given by the court, is as to the proper construction of the contract upon which the suit is brought. If the contract should be construed to be a simple contract between plaintiffs and defendant, by which defendant employed the plaintiffs to procure a loan of four thousand dollars for him at a certain commission to be paid therefor, defendant promising on his part to give as security a deed of trust on certain property named, then in such case the plaintiffs would have a right to presume that the defendant was the owner of the lot offered as security; and if they went on in *good faith* and procured the money or negotiated the loan required; but the defendant's title to the land proving defective and loan failing of consummation, the plaintiffs would be entitled to their commission. Such a case would come within the principle decided in the case of Bailey vs. Chapman, (41 Mo., p. 536,) and cases there cited, and the declaration of law given by the court in this case, in such case might be proper. But that is not the case before us. Here one Paul, (who seems to be some way engaged for plaintiffs,) goes to the defendant to know if he wanted to borrow money. Defendant informs him that he would like to obtain the loan of four thousand dollars for five years; he informs Paul of the property he offers as security; furnishes him the title papers to the property, so that the title might be investigated. Paul tells him that he will have to get the plaintiffs to make the arrangement, which he promises to do. Paul took the title papers and gave them to plaintiffs and informed plaintiffs, that defendant wanted to procure the loan. After this the defendant called at the office of plaintiffs and there the agreement proved was made.

(The evidence has been set forth in full, that pertained to the contract, so that it will appear in full in the statement of the case.) It appears that the defendant called at the office of plaintiffs before any examination of his title to the lot had been made.

Plaintiffs told defendant that they would charge him two hundred dollars for procuring the loan for him, the two hundred dollars to include the expenses of the examination and everything; the plaintiffs agreed to pay the expenses of the examination of the title; to this proposition it seems that the defendant agreed. The plaintiffs, it seems, without examining the title applied to a Connecticut Insurance Company to get the loan of the money; this company agreed to furnish the money on the condition that Albert Todd, upon whose report alone the company would loan the money, should report favorably. Todd reported unfavorably and the company refused to furnish the money. This is the whole contract as proved in a condensed form. Now it will be seen by this contract, that the defendant had employed the plaintiffs not only to procure the loan, but to examine the title of the property and see if it was good and whether a loan could be procured upon it. It seems to me, that the plaintiffs in such case, ought to have first ascertained whether the title was good and then procured the loan, if the title proved good and sufficient. They were defendant's agents for both purposes, and in fact they having agreed to have the title examined, and having the title papers in their hands for that purpose they are to be charged with notice of the defect in the title before they procured the money, and it would be bad faith in them to charge the defendant commission for procuring money, when it was their duty to have known at the time that it would be unavailing. It seems that the money never was really obtained; it was only placed where the plaintiff's could obtain it on condition that Todd should report favorably on the title, a matter that the plaintiffs had obligated themselves to have attended to. It is impossible to believe after carefully looking at the contract as proved, that the defendant ever intended to bind himself to pay the two hundred dollars, unless the money could be obtained on the property with the title furnished. It is said, however, that by this construction of the contract you compel the plaintiffs to have the title examined, and if the loan is not perfected, they receive no pay for it. That may be, but it is their contract

and by giving the contract the construction contended for by the plaintiffs, you would put it in the power of the plaintiffs to charge the defendant for services which they knew at the time, or ought by his contract to have known, was useless.— With this construction of the contract it will appear that the declaration of law made by the court was improper, being predicated on an improper construction of the contract as proved and the judgment must therefore be reversed.

Judges Adams and Sherwood concurring, the judgment of the Circuit Court is reversed and the cause remanded.

Judges Ewing and Wagner dissent.

Dissenting opinion of Judge EWING, WAGNER Judge, concurring with him.

This action was commenced before a Justice of the Peace to recover commissions for procuring a loan of $4,000 for defendant.

There was a judgment for plaintiffs before the Justice, and also on appeal to the Circuit Court, which being affirmed in General Term the cause is brought to this court by appeal. The evidence tended to prove, that the defendant, wishing to procure a loan on real estate in St. Louis, had an interview on the subject with one Paul, a broker, to whom he delivered a deed for the purpose of having the title investigated, but nothing being accomplished between these parties, Paul referred him to the plaintiffs who were engaged in that business, with whom negotiations were entered into, resulting in an agreement that plaintiffs would procure a loan for the sum named for five years for $200, plaintiffs paying the expenses of investigating the title to the property offered as security. It appeared in evidence, that the plaintiffs applied to the Connecticut Life Ins. Co. for the money and the required amount was placed to their credit by the Company for the purpose, to be drawn upon in the event that Mr. Todd, the attorney of the Company, would report favorably as to the title ; that the title papers which had been put in the hands of Paul, being turned over to plaintiffs, they caused an investigation of the title to be made by A. N. Sterling, an examiner of land titles

in St. Louis, an abstract of which he prepared, which being submitted to Mr. Todd, he pronounced the title defective; that defendant was informed of this objection to the title; and that it must be removed before the loan could be had; that defendant insisted that the title was good, and said he would see Mr. Todd; that the defect was never removed; that the money having been held by the Insurance Company sometime, subject to the call of plaintiffs, was finally withdrawn when it became apparent that defendant would not take the loan. A. N. Sterling, an examiner of titles, testified to having made the investigations at the request of plaintiffs, and prepared an abstract of the title, which contained an abstract of all the deeds on record affecting the title to said property, and that a certain deed from Wright to Olden, was a necessary link in defendant's chain of title to the property in question, and without it the title would not be good. This testimony was objected to on the ground of incompetency and irrelevancy, but the objection was overruled, and the defendant excepted. The abstract of title, and the deed from Wright and wife to Olden, were then read in evidence against the defendant's objections. The defendant asked an instruction in the nature of a demurrer to the evidence, which was refused, and he excepted. No evidence was offered on the part of defendant.

The Court at the instance of plaintiffs declared the law to be : That if the defendant engaged the plaintiffs as brokers to procure for him a loan of $4,000, on certain real estate, agreeing to pay plaintiffs a commission for procuring the same ; and further, if plaintiffs did procure a lender with the money in readiness, who approved of the sufficiency of the security, then plaintiffs are entitled to recover of the defendant his agreed commission, although the lender upon an examination of the title, found the same defective, and refused therefore to consummate the loan.

Where a broker is employed to procure a loan of money, there is always an implied obligation on his part to procure a person who is willing and ready to make the loan on security

that is adequate in value and the title to which is good. This done, his duty is performed, and he is entitled to his commissions whether the loan is consummated or not, unless his right to commission is by special agreement made to depend upon conditions which the law does not annex to his engagement as a broker. The principal cannot relieve himself from liability by a capricious refusal to effect the loan, or by a voluntary act of his own disabling him from performance. The authorities I have examined, agree substantially in recognizing this as the correct rule, both in respect to loans and sales of property. (See Barnard vs. Monnot 33 How. Pr., 440 ; Glentworth vs. Luther, 21 Barb., 145 ; Corning vs. Calvert, 2 Hilt., 56 ; Moses vs. Bierling, 31 N. Y., 462 ; Koch vs. Emmerling, 22 How., 69 ; Keys vs. Johnson, 68 Penn. St., 42 ; Insley v. Jones, Brightlys, N. P., 76 ; Baily vs. Chapman, 41 Mo., 536 ; Kent and Obear vs. Allen, 32 Mo., 87.) In Holly vs. Gosling, 3 E. D. Smith, 263, a case more directly in point than any I have ever seen, the defense to the action, plaintiffs being brokers, was, that the title was defective, and the lender for that reason withheld the loan. The answer of the Court to this, was that plaintiff having procured the loan, i. e., found a lender who had the money ready, having procured a consent to the loan, and obtained an approval of the sufficiency of the security, he did all that was necessary to make his title to the commissions perfect, and all that his employment required and, adds the Judge, "it was no part of his undertaking or duty to remove incumbrances upon the premises proposed to be mortgaged, and if an incumbrance was found, or by reason of his failure to remove the incumbrance the lender refused to consummate the transaction by paying over the money, that was the defendant's fault, and furnished no defense to the plaintiff's claim for commissions. The broker assumes no obligations in reference to the title, no more in respect to loan, than sales. The borrower when employing a broker to procure a loan, does so, always upon the implied conditions that he will make or tender to the lender, a good title to the property offered as the security for the loan. And if upon pre-

senting such a title it is rejected, he is not responsible to the broker for commissions; but if the negotiations are made, and the sale is not effected in consequence of a defective title, then the broker is entitled to his commissions, the same as if he had consummated the sale.

Such are the obvious legal consequences of performance on the one part, and default on the other. An express stipulation that a defective title should not affect the claim for commissions in the case supposed, could add nothing to the legal obligation implied in the employment of a broker in respect to his right to compensation.

Applying these principles to the case under consideration, there can be no difficulty in arriving at a proper conclusion.

The evidence shows that the plaintiffs, pursuant to their agreement with Zoller, caused the title to be investigated by a competent examiner of titles, Mr. Sterling, the terms and conditions of the loan having been agreed on before the investigation was made, that the abstract of title being afterwards submitted to Mr. Todd, was pronounced defective, that defendant, though insisting that it was good, made no attempt to satisfy plaintiffs or Mr. Todd of that fact, or to furnish any evidence to that effect at the trial, and declined all inquiry as to the ground of such objection, or the nature of the defect. If the objection to the title was frivolous or groundless or was merely capricious, which we are certainly not warranted in *presuming*, it was for the defendant to show this by producing the necessary evidence of title. When the plaintiffs undertook under their agreement to have the title investigated, they adopted the usual course in employing a competent examiner for that purpose. The defendant never at any time pointed out any defect in the abstract or made any specific objection to it. Nor did he object to the person selected to make the examination, nor the manner in which it was done. The plaintiffs then having made out their case by proof of a contract with Zoller, and of performance on their part, they had nothing more to do. It did not devolve upon them to aid their adversary in establishing his defense, by adducing evi-

dence of the supposed unreasonableness of the objections made to the title by the lender or its attorney, Mr. Todd, notwithstanding the loan was to be made only in the event of Mr. Todd's approval of the title. Such an understanding did not affect the right of plaintiffs to their commissions, if they performed their agreement. The legal effect would not have been different, had the lender made this reservation of the right of approval directly to himself instead of an attorney. For the question at last is not whether objections were made, but was there a good title? If the title was good, the loan could not be declined by the lender as we have seen, without involving a forfeiture of the claim of the broker for commissions. As already indicated, it devolved upon the defendant to show that he tendered to the lender a good title to the property. This being implied in his engagement with the broker, he must show compliance in order to exonerate himself from liability for commissions.

The abstract of title read in evidence by the plaintiffs, was not admissible for the purpose of showing the nature and condition of the defendant's title or any particular defect in it. The title papers themselves were of course the best evidence and there was no foundation laid for the production of secondary evidence. So of the deed from Wright to Olden, which was read in evidence. This deed was one of a number of intermediate links in the chain of title as shown by the abstract. But it was only in this way that it appeared to be part of *defendant's* title, or had any connection with it, being about equally remote from the first and last links in the chain, —the source of the title, and the defendant, the last grantee. This deed in which it is claimed the defect appeared, *without* the abstract would therefore prove nothing.

These papers were introduced by the plaintiffs it would seem on the supposition, that it devolved on them to show the title defective, a burden which as we have seen, it was not incumbent on them to assume. As in my view of the nature of the issues in such cases, and upon the state of facts disclosed by the record, proof of title should come from the other side —the party asserting the validity of his title.

In my opinion the judgment should be affirmed. Judge Wagner concurs.