### ANDERS PETERSON v. T. O. HALL.[1]

June 7, 1895.

Nos. 8934—(11).

**Contract with Loan Broker—Reasonable Time.**

Where a party employs a loan broker to obtain a loan of money for him, or to sell a note and mortgage,—the contract of employment being in writing, and wholly silent as to the time within which the broker is to obtain the money,—the latter is entitled to a reasonable time; all of the circumstances to be taken into consideration when determining this period of time.

**Same—Commission.**

If, within such reasonable time, the broker finds a party ready, willing, and able to make the loan, or to purchase the note and mortgage, upon the terms proposed, he has earned his commission.

**Same—Lien.**

When a broker is intrusted with the possession of a note and mortgage, in respect to which he negotiates, he is entitled to a lien upon the same, or on the proceeds thereof, if in his possession, for his commissions.

**Claim and Delivery—Value of Property.**

When, in an action of claim and delivery, the actual value of the property in controversy—a note and mortgage—is stated, in the complaint, statutory bond, and affidavit, to be the principal of the note, it is error to charge the jury that in fixing the value they may take into consideration the interest on the note which had accrued prior to the bringing of the action.

Appeal by defendant from an order of the municipal court of Duluth, Winje, Special Judge, denying a motion for a new trial. Reversed.

*Schmidt & Reynolds*, for appellant.
*John H. Boyle*, for respondent.

[1] Reported in 63 N. W. 733.

COLLINS, J. This was an action in claim and delivery to recover possession of a note and a mortgage securing the same, or their value in case a recovery could not be had.

The pertinent facts were that plaintiff, who was the payee and mortgagee, applied to defendant, engaged in the business of negotiating and procuring mortgage loans from Eastern parties, to negotiate and procure for him a loan. This was on September 11, 1893. There was some dispute at the trial as to what amount plaintiff wanted. He testified that it was $150, and that the note and mortgage were to be transferred and assigned as collateral security, while defendant claimed that he was authorized to procure $300, for which plaintiff was to sell and assign the note and mortgage,—he to have $265, and defendant, as his commission, the balance, $35. At this interview the plaintiff signed two papers,—one authorizing and employing defendant to procure a loan of $300 for plaintiff upon the mortgaged premises, as if the latter was the owner in fee, and stipulating to pay the sum of $35 as a commission for procuring the loan, while the other was in the form of an application to defendant to negotiate a loan of $300 on said premises, and also contained an offer to sell the note and mortgage for $265. In the last-mentioned writing there was no express provision for defendant's compensation, and in neither was the time fixed within which defendant was to procure the money.

Both of these writings were exhibited in full, as part of the answer; and, in his reply, plaintiff simply denied their execution and delivery on information and belief, and also denied any knowledge of their contents, "except as appears on the face of said exhibits." This form of denial did not put in issue the allegations of the answer as to the execution and delivery of these instruments. And, on the trial, plaintiff admitted that he signed them, although stating at the same time that he did not know their contents. He left the mortgage with defendant September 11, and two days afterwards brought in and delivered the note. It was understood between the parties, on the day the papers were signed, that defendant would have to correspond with Eastern parties in order to obtain the money, and that, if plaintiff would call in five or six days, defendant would let him know about it. Plaintiff did call, and, on being informed that defendant had received no answer to his application,

made demand for a return of his note and mortgage. Defendant refused to accede to the demand, unless paid his commission, and plaintiff immediately commenced this action; the complaint being verified September 21,—10 days after the application was made. It was alleged in the answer, and shown upon the trial, that within 2 or 3 days after the suit was brought—about 12 days after defendant undertook to procure the money—it was received, and that he had ever since been ready, willing, and able to pay it over to the plaintiff, on the terms stipulated in either or both of the writings.

The case seems to have been submitted to the jury upon the theory that defendant was under obligation to have the money in readiness when plaintiff called, at the expiration of five or six days, and that he was not entitled to reasonable time within which to negotiate the loan, or a sale of the note and mortgage, nor entitled to a lien upon the same for the amount of his commission, unless it was expressly agreed that he should have such a lien. The court refused to charge, as requested by defendant's counsel, that their client had a reasonable time within which to obtain the money, and if, within a reasonable time after employment, he stood ready, willing, and able to pay it over, he had earned his commission, and was entitled to retain possession of the note and mortgage until he was paid. This was error. No time was fixed in the contract of employment within which defendant was to procure the money, and therefore he was entitled to a reasonable time, taking into consideration all of the circumstances. If, within this time, he procured a lender of the money or a purchaser of the note, who was ready, willing, and able to lend the money, or to purchase the note and mortgage, on the terms proposed, he had earned his commission, Vinton v. Baldwin, 88 Ind. 104; Budd v. Zoller, 52 Mo. 238. And he had a right to a lien on the instruments which had been placed in his hands to negotiate, as he claimed, without an express agreement to that effect. Where a broker is intrusted with possession of the property in respect to which he negotiates, thus combining with his character as a broker certain of the characteristics of a factor, he is entitled to a lien upon such property, or on the proceeds thereof, if in his possession, for his commission. Mechem, Ag. §§ 979, 980.

The only effect which could be given the testimony relative to defendant's statement to plaintiff to return in five or six days would

be as bearing on the question as to what was or would be a reasonable time in which he was to obtain the money. It could not control or contradict the written contract.

In the complaint, and, presumably, in the statutory bond and affidavit, the property in controversy was stated to be of the actual value of $300. The plaintiff did not obtain possession, and, with respect to value, the court charged, in substance, that the jury should find it to be $300, with over one year's interest, at 8 per cent., accrued before the beginning of the action. This instruction justified, and there was, a verdict, November 10, 1893, fixing the value at $327.60, or $27.60 more than the value stated in the complaint, bond, and affidavit made and filed 20 days before. The instruction was erroneous. As bearing upon this question, see Weyerhaeuser v. Foster, 60 Minn. 223, 61 N. W. 1129.

Order reversed.