JOHN W. GATY, Respondent, v. F. S. FOSTER, Appellant.

Kansas City Court of Appeals, July 6, 1885.

18  639
41   61
18  639
42  581
18  639
48  458

1. CONTRACT—BROKER'S COMMISSIONS FOR SALE, ETC.—If the owner of property employs a broker to sell it, or to find and send to him a purchaser for it, and in the contract of employment prescribes the terms and conditions on which the broker may act in selling or in securing a purchaser; and if the broker does not himself sell the property but does find and send to his employer one who is ready, able and willing to buy the property on the terms and conditions prescribed in the contract, and offers so to do—then the broker has earned his commission and is entitled to it, whether the employer accepts the offer or not. *Timberman v. Craddock*, 70 Mo. 638.

APPEAL from Johnson Circuit Court, HON. NOAH M. GIVAN, J.

*Reversed and remanded.*

Statement of case by the court.

This suit is brought upon a contract by which defendant employed the plaintiff as a real estate broker to sell or to find and send to defendant a purchaser for the latter's farm of 120 acres for the price and sum of $3,600. In the form of answers to questions, in the contract, the farm is minutely described by the defendant. In answer to the question, "When could you give possession?" contained in the contract, the defendant answered, "Any time." This answer contained one of the conditions on which the plaintiff was authorized to sell the farm. The contract, in conclusion provided, "and I agree to pay to Gaty five per cent. on the amount for which said premises may sell if he make a sale thereof, or finds or sends to me a purchaser." The contract was dated August 26, 1882. On October 11, 1882, H. H. Anderson visited plaintiff's office, and had his attention called by plaintiff to the farm of defendant. The evidence tended to show that soon after, in the same month, Anderson visited defendant's farm, and received a proposal from

defendant to sell the farm for $3,600, the price named to Gaty, the defendant reserving possession until March 1, 1883. But that Anderson wanted immediate possession. That during the same month Anderson paid a second visit, with the same result. That the defendant wanted to retain possession until March, 1883 ; and that Anderson wanted immediate possession. That there was no bargain. That the sale was not consummated. The defendant however testified that Anderson said he would not buy the farm unless his brother could secure a farm in the same neighborhood.

On November 1, 1882, the defendant wrote a letter to plaintiff withdrawing the farm from plaintiff's hands as broker. On November 6, 1882, Anderson paid a third visit to defendant and agreed to receive possession of the farm on March 1, 1883. The trade was thereupon made, the defendant retaining possession until March 1, 1883, and receiving $3,600 as the purchase price of the said farm. And on the 9th day of November, 1882, the matter was closed by the defendant executing a deed for the farm and receiving the purchase money from Anderson.

For the plaintiff the court instructed the jury :

"1. The jury are instructed that if they believe from the evidence that the purchaser of defendant's farm, one H. H. Anderson, was directed to defendant by said Gaty, or by his exertions or advertisements, or that negotiations were begun between defendant and said Anderson through the instrumentality of said Gaty while he was acting as agent for the sale of said land ; and that afterwards, within a reasonable time, said Foster sold said land to said Anderson, in pursuance of said negotiations, then the jury must find for plaintiff ; although they may also believe that, subsequent to the commencement of said negotiation, said Foster may have notified said Gaty that his (said Foster's) land was withdrawn from the market."

"2. If the jury find for plaintiff, they must assess his damages at the sum of one hundred and eighty dollars, with interest on the same at six per cent. per

annum from the time the same was demanded by said Gaty from said Foster, if they believe the same was so demanded prior to the commencement of this suit."

"3. If the jury believe from the evidence that plaintiff procured and sent to defendant a person who afterwards, and within a short time, purchased defendant's farm ; and that such purchaser was procured and sent by plaintiff to defendant before his authority as agent had been revoked, they will find for plaintiff."

For the defendant the court instructed the jury :

"1. The court instructs the jury that the contract of agency entered into between plaintiff and defendant was for no specified length of time, and was revoked at the pleasure of either plaintiff or defendant ; and that although the defendant did sell his farm on the 9th day of November, 1882, or sooner, yet if they find from the evidence that prior to the date of sale defendant, in good faith, without any purpose to deprive plaintiff of his commission, fairly terminated said agency, the jury must find for defendant ; and the fact that the purchaser of said land, when sold, was one whom the plaintiff had introduced, and that the sale was in some degree aided by the previous unsuccessful efforts of plaintiff, if unsuccessful, does not entitle him to commission or to recover in this case."

The jury thereupon returned a verdict in favor of plaintiff in the sum of $186.30, and judgment was rendered accordingly. The case has been brought here by the defendant by appeal.

J. M. SHEPHERD and O. L. HOUTS, for the appellant.

I. If, after a broker has been allowed a reasonable time to procure a buyer and effect a sale, and has failed to do so, and the seller in good faith and fairly, has terminated the agency and himself consummated the sale, it does not give the broker the right to commission because the purchaser is one whom he introduced, and the final sale, is, in some degree, aided or helped forward by his previous unsuccessful efforts. *Sibbald v. Iron*

*Co.*, 83 N. Y. 378; *Wylie v. Marine Nat. Bank*, 61 N. Y. 416. This rule the court stated correctly in the instruction given for defendant, but contradicted it in another instruction given for plaintiff.

II.   The evidence here showed that after waiting a reasonable time, and after urging the agent to press the sale without success, defendant revoked the agency, and some time afterwards effected a sale himself. He had an undoubted right to revoke the agency.

III.   Whether the time given was reasonable, and whether the revoking of the agency was in good faith, were *questions of fact* for the jury. These questions the court took from the jury and virtually said, though defendant had waited a reasonable time and plaintiff had failed to make a sale, and defendant, in good faith and fairly revoked the agency, still he was not authorized to deal with his own, but must again wait, a *short time;* but the *length of time* can have no possible bearing on the case. The question of good faith should have been left to the jury. *Sibbald v. Bethlehem Iron Co.*, 83 N. Y. 378.

Jno. M. Crutchfield, Wm. M. Brinker, for the respondent.

I.   If, after the property is placed in the agent's hands, the sale is brought about by his exertions, he will be entitled to his commissions. Or, if the agent introduce the purchaser, or discloses his name to the seller, and through such introduction or disclosure, negotiations are begun and the sale effected, the agent is entitled to his commissions *though the sale be made by the owner. Tyler v. Parr*, 52 Mo. 249; *Bell v. Kaiser*, 50 Mo. 150; *Carpenter v. Rynders*, 52 Mo. 278; *Bailey v. Chapman*, 41 Mo. 536; *Oglesby v. Austin*, 27 Kansas 245.

II.   The broker's commissions are earned when he procures a buyer at the price named by the owner. *Durkee v. R. R. Co.*, 29 Vermont 127; *Timbermann v. Craddock*, 70 Mo. 638; *Phelan v. Gardner*, 43 Cal. 306; *Magarok v. Wadlief*, 20 How. (U. S.) 221;

*Kimbrely v. Henderson*, 29 Ind. 512; *Cooke v. Fisk*, 12 Gray (Mass.) 491.

III. The duty of a broker is ended when he has found a purchaser and brought the parties together. If the agency is the procuring cause at the sale the agent is entitled to his commissions. *Higgins v. Moore*, 34 N. Y. 417; *Lyon v. Mitchell*, 36 N. Y. 235; *Redfield v. Tegg*, 38 N. Y. 212.

IV. The change in the time when possession should be given from "at any time," to "March 1, 1883," cannot impair plaintiff's right to recover. *Woods v. Stephens*, 47 Mo. 555; *Fisher v. Drewett*, 7 Rep. 350.

V. No exception was taken to the giving of the instruction to plaintiff complained of, nor is it assigned for error in defendant's brief.

Opinion by HALL, J.

The defendant complains here of the giving of plaintiff's instructions, numbers one and three.

We think, as contended by defendant, with a certain limitation, "that after a broker has been allowed a reasonable time in which to procure a buyer and effect a sale and has failed to do so, and the seller, in good faith and fairly, has terminated the agency, and himself consummated a sale, it does not give the broker a right to commission because the purchaser is one whom he introduced, and the final sale is, in some degree, aided or helped forward by his previous unsuccessful efforts."

In support of this proposition of law the defendant has cited *Sibald v. Bethlehem Iron Company* (83 N. Y. 378), and *Wylie v. Marine National Bank* (61 N. Y. 416). And by those cases the proposition, as contended for by the defendant, is enunciated, but with one important limitation. In *Sibald v. Bethlehem Iron Company*, *supra*, after stating said proposition, it is said: "This, however, must be taken with one important and necessary limitation. If the efforts of the broker are rendered a failure by the fault of the employer, if he capriciously changes his mind after the purchaser is ready and willing, and consenting to the prescribed terms is

produced, \* \* \* then the broker does not lose his commission. And that upon the familiar principle, that no one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance." And to the same effect is *Wylie v. Marine National Bank, supra.*

By those cases and by a long list of adjudicated cases we understand the law to be that, if the owner of property employs a broker to sell it, or to find and send to him a purchaser for it, and in the contract of employment prescribes the terms and conditions on which the broker may act in selling or in securing a purchaser, and if the broker does not himself sell the property but does find and send to his employer one who is ready, able and willing to buy the property on the terms and conditions prescribed in said contract, and offers so to do, then the broker has earned his commission and is entitled to it whether the employer accepts the offer or not. The employer cannot impose conditions other than and in addition to the conditions named in the contract, under such circumstances, so as to prevent the broker from receiving his commission. If the employer has prescribed in the contract as one condition that he will give to a purchaser immediate possession, he can no more, by refusing to sell unless the purchaser will permit him to retain possession for the ensuing four months, prevent the broker from receiving his commission, than he could so do by refusing to sell the property for $3,600, the price named in the contract of employment, and by demanding $4,600 or any other larger sum, from the purchaser ready, able and willing to pay $3,600. The proposition contended for by defendant applies only to those cases in which the proposing purchaser, sent by the broker, fails to accept the terms and conditions named in the contract employing the broker, if they be fixed by the contract. The proposition does not apply to those cases in which such proposing purchaser accepts said terms and conditions, and is ready, able and willing to carry them out. *Bailey v. Chapman,* 41 Mo. 538; *Carpenter v. Rynders,* 52 Mo. 278; *Budd et al. v.*

*Zoller*, 52 Mo. 242; *Phelan v. Gardner*, 43 Cal. 311; *Cook v. Fiske*, 12 Gray 493: *Fisher v. Drewett*, 7 Rep. 350. By nothing said here do we intimate that the employer may not, at any time before such a purchaser is sent to him by his broker, revoke in whole, or in any manner modify his contract with the broker. For this reason the defendant's instruction is not correct and should not have been given. It ignores the limitation placed upon the defendant's proposition by the authorities cited. The defendant's proposition as limited, we think, is the law, and is in perfect harmony with *Tyler v. Parr* (52 Mo. 249); *Timbermann v. Craddock* (70 Mo. 638), and similar cases.

The fact that instructions one and three given for plaintiff conflict with defendant's instruction does not, therefore, of itself constitute error. But plaintiff's said instructions are incorrect. They ignore defendant's proposition as limited by us herein. The facts, that Anderson was directed to defendant by plaintiff, and that he met defendant and began negotiations with him for the purchase of the farm, prior to the revocation of the plaintiff's agency, and that after such revocation the purchase was made by Anderson, do not necessarily entitle plaintiff to his commission. As we have said hereinbefore, if Anderson did not offer to buy on the prescribed terms and conditions, and if, after negotiations began, the defendant, in good faith and fairly, and not to defraud the plaintiff, revoked the plaintiff's agency and afterwards made the sale himself to Anderson, the plaintiff would not be entitled to his commission.

While it is true the evidence tends strongly to show that Anderson was, prior to November 1, 1882, ready, able and willing to purchase the defendant's farm on the prescribed terms and conditions, and offered so to do; yet, this is not an admitted fact, and from the evidence of the defendant the contrary might be inferred. This fact is, therefore, at issue in this case, and should have been submitted to the jury. This was not done. The jury have not passed upon it. We cannot do so. It is true as argued by plaintiff, that the jury have in a certain

sense found that the defendant, in revoking plaintiff's agency did not act in good faith. But the instructions given for plaintiff and defendant are so contradictory that we cannot say that they did so uninfluenced by that fact. The instructions given for both plaintiff and defendant, as we understand the law, are incorrect. The issues of fact were not properly submitted to the jury. And we cannot permit the judgment herein to stand, without ourselves passing upon those issues, a thing, whatever we may think about the merits of the case, we cannot permit ourselves to do.

The judgment is reversed and the cause is remanded. All concur.