CHARLES CHRISTENSEN, Appellant, v. G. A. C. WOOLEY *et al.*, Respondents.

St. Louis Court of Appeals, April 29, 1890.

1. **Estoppel:** FACTOR AND BROKER. If one, who has contracted to purchase land, refuses to carry out his contract after he has paid a part of the purchase money as earnest money to the owner's broker, and suit is instituted by the land-owner against the broker for such earnest money, it is not material to the determination therein of the broker's right to deduct his commissions from the earnest money, whether the contract of sale effected by the broker was binding on the purchaser under the statute of frauds, or not. The land-owner cannot in such suit assert the validity of the contract for the purpose of entitling himself to the earnest money, and deny its validity in order to defeat the broker's right to commissions.

*Per Biggs, J.:*

2. **Statute of Frauds:** MEMORANDUM IN WRITING. The memorandum in writing for the sale of land, which will satisfy the statute of frauds, need not be contained in one paper. The contract may be made up of several papers, which may be read together as one contract, provided that the paper signed by the party to be bound refers to the others so as to enable the court to gather the terms of the contract from all, when read as a whole. And, if the reference made in the paper signed by said party to the other documents be ambiguous, parol evidence is admissible to explain the ambiguity and identify the document referred to. Rule applied in case at bar, and the memorandum *held* sufficient.

3.   **Real-Estate Broker:** RIGHT TO COMMISSIONS.  A real-estate
     broker, otherwise entitled to his commissions, is not deprived of
     his right thereto by reason of the refusal of the purchaser to carry
     out the contract of sale on account of an alleged defect in the title
     of the vendor to the property.

4.   —————: RIGHT TO COMPENSATION.  If a real-estate broker, through
     whom a sale of land is effected, makes representations to the vendee
     as to the title, such representations, however, being merely made as
     expressions of opinion, and being neither made nor understood
     to have been made on the strength of the personal knowledge of
     the broker, this fact will not defeat such broker's right to commis-
     sions on a resale of the land effected by him for the vendee under
     the first sale, though the vendee under the second sale refused to
     carry out his contract of purchase on the ground of an alleged
     defect in the title.

*Appeal from the Greene Circuit Court.*—HON. W. D.
HUBBARD, Judge.

AFFIRMED.

*Benjamin U. Massey* and *Ethelbert Ward*, for
appellant.

*Thrasher, White & McCammon*, for respondents.

BIGGS, J.—This is an action to recover the sum of
two hundred and twenty-five dollars, which the plain-
tiff alleged had been received by the defendants as his
agents, and they had refused to pay to him on demand.
The defendants denied the indebtedness, and averred
that they were real-estate agents, and that the money
retained by them was the amount of their commissions
on a sale of plaintiff's property to one O. R. Symmes;
that they had been employed by the plaintiff to sell
certain real estate, and that, through their efforts, a
valid contract for the sale thereof, upon the terms
agreed on, was made with Symmes; that Symmes paid
in cash five hundred dollars, but afterwards refused to
complete the sale on account of alleged defects in the

plaintiff's title; that the plaintiff declined to enforce the specific performance of the contract with Symmes, and, prior to the bringing of this suit, sold the real estate to other parties; that, under the contract with the plaintiff, the defendants' commissions on the sale amounted to two hundred and twenty-five dollars, and that the defendants retained (as they lawfully might do) that amount of the cash paid by Symmes, and the remainder, to-wit, two hundred and seventy-five dollars, they paid to the plaintiff.

The plaintiff's replication put in issue the averments of the answer, and, upon the issues as thus made up, the cause was submitted to the court sitting as a jury. The finding and judgment were for the defendants, and the plaintiff has brought the case to this court for review.

The plaintiff only complains of the instructions given and refused. It will not be necessary for us to set out the instructions in this opinion, as our discussion of the propositions hereinafter stated will dispose of all legal questions necessary to a complete determination of the action.

We will treat of two questions only in this opinion: *First.* Did the defendants in the sale of the property bind the purchaser to a contract, which the plaintiff could have enforced, if his title to the property had been unobjectionable? *Second.* If there was such a contract, what effect did the refusal of Symmes to comply with it have upon the defendants' right to commissions?

I. The plaintiff's counsel insist that, while the defendants bound their client by a valid contract, they failed to secure from Symmes a sufficient written memorandum of the contract so as to enable the plaintiff to specifically enforce it; that, therefore, the five hundred dollars paid on the purchase by Symmes must be regarded as a forfeit or option, and that, when Symmes failed to complete the purchase, this money became the absolute

property of the plaintiff.   Whether this position can be 'sustained as a legal proposition or not, we need not stop to inquire, because the statement is not borne out by the facts.   We are of the opinion that the defendants did secure from Symmes a valid contract, and that consequently they were entitled to full commissions.

In every contract for the sale of land, or any interest therein, there must be a memorandum in writing, signed by the party sought to be charged; and the writing must show within itself, or by reference to some other paper or papers, all the material conditions of the contract.   The contract may be made up of several papers signed by the different parties to it respectively, and, if necessary to satisfy the statute, and bind the parties, the various papers will be read as constituting one contract, provided that the paper, signed by the party attempted to be held, makes reference to the other papers so as to enable the court to gather from the papers, when read as a whole, the terms of the contract. *O'Donnell v. Leeman*, 43 Me. 160; Benjamin on Sales, sec. 222; Waterman, Spec. Perf., sec. 232, p. 311; Browne on the Statute of Frauds [ 4 Ed.] sec. 346 *b*.   But, if it be necessary to introduce extrinsic evidence for the purpose of connecting the papers, then they cannot be read together.   If the reference made to other documents in the signed paper is ambiguous, parol evidence *may* be admissible to explain the ambiguity or to identify the documents referred to.   Benjamin on Sales, *supra*.

Now let us apply the foregoing legal principles to the facts in this case.   It is admitted that the plaintiff put his property into the defendants' hands for sale, and that the attempted sale to Symmes was in compliance with the terms agreed on between them.   It is also conceded that Symmes bargained for the land for himself, J. B. Montgomery and C. M. Condon, although the negotiations were conducted in Symmes' name.   At the time of the purchase Symmes paid to the defendants

on account thereof the sum of five hundred dollars, and the defendants executed and delivered to him the following receipt :

"$500.00.        SPRINGFIELD, Mo., March 18, 1887.

"Received of O. R. Symmes five hundred dollars, part purchase money for sixteen acres of land known as the Murray tract, adjoining the city limits on the south and east of D. C. Kennedy's land.   Sold him on the following terms :    Price, eight thousand dollars for the entire tract, two thousand dollars' cash when abstract and deed is furnished, of which the five hundred dollars is a part.   The balance of purchase to be paid :    Two thousand dollars in six months, two thousand dollars in twelve months, two thousand dollars in eighteen months from date of transfer.   All unpaid balance to bear. interest at the rate of ten per cent. and secured by deed of trust on the land.

"[ Signed.]        WOOLEY, PORTER & HUBBELL."

This receipt was the only written evidence of the sale at the time the trade was made, and it is not claimed by the defendants that the receipt within itself would bind Symmes ; but they do claim that the subsequent letters of Symmes and Montgomery, when read in connection with the receipt, were sufficient to take the case out of the operation of the statute of frauds.

Symmes lived in Oswego, Kansas, and he left Springfield before the abstract of title to the land was completed.   The defendants on the night of the eighteenth of March mailed the abstract to him at Oswego, and on the following day it was returned by Montgomery to their Springfield agent, and he also addressed to the defendants the following letter :

"OSWEGO, KANSAS, March 19, 1887.

"I return the abstract to C. B. Sperry.   You ought to get an attorney to pass upon your papers, or do it yourself.   The one sent and returned is absolutely the

worst thing I ever saw, and I am surprised at your send-
ing it out in shape it is in. I have directed Mr. Sperry
to see you, and, if the abstract of title is as represented,
I cannot take the property. You can see for yourselves
the inconsistency of the title. Yours,

"J. B. MONTGOMERY."

After this there was a great deal of correspondence
between the defendants and Symmes and Montgomery
concerning the purchase. We deem it unnecessary to
incumber this opinion with the entire correspondence,
and we will only embody herein extracts referring to
the receipt signed by the defendants. Under date of
March 19, Symmes wrote from Oswego to the defend-
ants as follows :

"DEAR SIRS :—Make us a warranty deed, and in
drawing up notes can't you make them payable on or
before, and instead of taking a trust deed let us sign the
notes and have the following names thereon, viz. : O. R.
Symmes, J. B. Montgomery and C. M. Condon? If
you can arrange it thus for us we would be very glad,
as we might want to put the land on the market and
sell by the block or lot. I will either come or send a
man over shortly to clear off the land and get it in good
shape for the surveyors."

On April 17, Symmes wrote the following letter to
the defendants :

"DEAR SIRS :—I herewith return to you the papers
sent me some time since. The abstract is faulty, and I
don't care to parley any longer about this matter. The
time for our being able to dispose of it as we wished to
has about passed, and I have other use for my money, as
I have waited for a long time for you to perfect this
abstract, and now we prefer you should return the five
hundred dollars you hold of ours, and by so doing you
will oblige a friend.          O. R. SYMMES."

On the twenty-fifth of April, Symmes again wrote :

" *Wooley, Porter & Hubbell, Springfield, Mo.*

"DEAR SIRS :—I return herewith abstract to the *Murray land,* and as I told you some days since, Mr. Montgomery and myself are not now in a position to take this land, as Mr. Christensen was entirely too long in perfecting the title, and as for the taking of the W. T. deed from anybody till title is perfected, we here in Kansas never think of such a thing. We take no deed till title is perfected.

"I have just been talking to Mr. Montgomery, and he says we don't want the land, and I say the same.

"I fully understand the position you occupy in this matter, and I have no fault to find with you, but if Mr. C. had of perfected his title when he purchased he would have avoided all his trouble. I take the liberty to draw on you for the amount you have of ours, viz., five hundred dollars. Please protect and oblige.

"I hope that you will comply with this request as I do not want any trouble in regard to the matter and a speedy settlement will avoid the same, as the amount we had up was not an option."

The following is an extract from a letter written by Montgomery to the defendants under date April 28:

"GENTS :—In the purchase Mr. Symmes made of you to the *sixteen-acre* tract of land near Springfield, I was interested one-fourth, another party here one-fourth, and Mr. Symmes the half. Owing to the defective title, and the procrastination of same, we feel that we are no longer a party to the trade. You have failed to make good ·a clear title, and we must have the money which we have paid out."

On the fifth day of July following, Symmes wrote the following letter:

"*Messrs. Wooley, Porter & Hubbell, Springfield, Mo.*

"SIRS :—Referring to our deal and with a view of getting things adjusted, we will say that we don't like

trouble and would like to avoid litigation if possible about this matter, and would like to say this to you for your kind consideration, viz. : That you remit to us two hundred and fifty dollars ($250), and you retain a like amount, and we will send you your *receipt* for the five hundred dollars and discharge this matter in that way. To accept a faulty title is something that Mr. Montgomery and myself don't want to do, as we never could give a good warranty deed for the same, as that might involve ourselves and heirs in litigation in the future. Trusting, gentlemen, that this proposition will meet your approbation, I await your reply.

"Yours,

"O. R. SYMMES."

This correspondence refers directly to the receipt delivered by the defendants to Symmes; hence we are justified, in determining the validity of the contract of purchase, to read the receipt and correspondence together. When this is done we have undoubtedly a complete contract binding on all parties, in which the property is definitely described and the exact terms of sale are given. This satisfies the statute, and we are compelled to rule this point against the plaintiff.

II. Plaintiff's counsel make the argument that, although a valid contract of sale was made by the defendants with Symmes, yet, if Symmes failed without any fault on the part of the plaintiff to perform the contract, the defendants were not entitled to their commissions. This position is at war with the Missouri law on the subject. The whole tenor of the decisions of both courts of appeals, and the supreme court, is to the effect that the real-estate agent has performed his whole duty under the law, and is, therefore, entitled to his commissions, whenever he finds and produces a purchaser ready and willing to buy according to the terms agreed on ; or when he procures a valid contract of purchase from a solvent buyer. *Carpenter v. Rynders,* 52 Mo. 278 ; *Bailey v. Chapman,* 41 Mo. 536 ; *Love v.*

*Owens*, 31 Mo. App. 501 ; *Gaty v. Foster*, 18 Mo. App. 639 ; *Nesbit v. Hesler*, 49 Mo. 383 ; *Hayden v. Grillo*, 35 Mo. App. 653. The agent in such a case is entitled to his commissions, though the trade was afterwards broken off on account of a defect in the seller's title. *Collins v. Fowler*, 8 Mo. App. 588 ; *Love v. Owens*, *supra*. But the plaintiff insists that, even though the law is as stated above, the case at bar ought to form an exception to the rule, and be governed by the doctrine announced in the case of *Budd v. Zoller*, 52 Mo. 238. In the case last referred to, Budd had agreed with Zoller to procure for him a loan on the credit of certain real estate. Definite arrangements were made by Budd for the loan, but, Zoller's title to the land proving unsatisfactory, the lender declined to complete the loan ; Budd then sued for his commissions, and the majority of the court, in passing on his right of recovery, said : "Now it will be seen by this contract that the defendant had employed the plaintiffs not only to procure the loan, but to examine the title to the property, and see if it was good and whether a loan could be procured upon it. It seems to me that the plaintiffs in such a case ought to have first ascertained whether the title was good, and then procured the loan, if the title proved good and sufficient. They were defendant's agents for both purposes, and in fact, they having agreed to have the title examined, and having the title papers in their hands for that purpose, they are to be charged with notice of the defect in the title before they procured the money, and it would be bad faith in them to charge the defendant commissions for procuring money, when it was their duty to have known at the time that it would be unavailing." In the present case it is not claimed that the defendants agreed to have the title examined before offering the property for sale, but that the plaintiff only a few days before the sale to Symmes had bought the land from Murray and Grabill through defendants' agency, and that in this purchase the

Christensen v. Wooley.

defendants represented that the title was good, and, therefore, it is argued, that it would be inequitable and unjust to compel the plaintiff to allow the defendants to deduct their commissions from the cash payment, when the sale was defeated through the defective condition of the title, and from no other fault of plaintiff. The evidence on this subject shows that whatever representations the defendants may have made concerning the title were merely expressions of opinion, and were neither made nor understood as made on their personal knowledge, but were based merely on the supposition that Murray and Grabill, who owned the land, would not convey by warranty deed, if the title was defective.

We can see nothing in this case to take it out of the general rule. The defendants found a purchaser who was admitted to be solvent; they secured a valid contract of sale; and the failure of the purchaser to consummate the purchase was through no fault of theirs, but was solely attributable to an alleged defective condition of plaintiff's title. If the plaintiff's title was good, he could have compelled Symmes to specifically perform the contract; if the title was in fact defective, this would afford the plaintiff no excuse for withholding from the defendants the agreed compensation. It was the duty of the plaintiff, before putting his land on the market for sale, to look to his title, and, under the facts of this case, it was no part of the duty of the defendants to do this for him. Under this state of the evidence there is no rule of law, with which we are acquainted, that would relieve the plaintiff from his legal obligation to compensate the defendants for making the sale.

The judgment of the circuit court will be affirmed. The other judges concur in the result.

ROMBAUER, P. J. ( *concurring* ).—In the opinion of Judge THOMPSON and myself, the question whether the proof shows a valid sale within the provisions of the

statute of frauds is immaterial. The plaintiff, by insti-
tuting this suit to recover part of the purchase money
of the lands in the hands of his agents, is estopped from
asserting that the agents failed to make a valid sale.
The plaintiff cannot take the inconsistent position of
treating the sale as both valid and invalid, valid for the
purpose of entitling him to recover part of the purchase
money, and yet invalid for the purpose of entitling his
agents to commissions.