June 17th, 1907.

————o————

## No. 4129.

(Court of Appeal, Parish of Orleans.)

## DENIS, DANZIGER & TESSIER vs. MRS. CAROLINE TILTON et al.

The doctrine announced by us in Loyacano vs. Suc. Thompson, No. 4214, to the effect that a broker who is employed to negotiate a sale fully performs his duty when he has procured a purchaser ready and able to buy the property upon the terms stipulated by his principal when the broker's services were engaged whether the sale is effected or not as the result of the refusal or inabilty of the principal to complete the contract, is affirmed.

Appeal from Civil District Court, Division "B."

Dinkelspiel, Hart & Davey, for Plaintiff and Appellant.

Fenner, Henderson & Fenner, for Defendant and Appellee.

MOORE, J. The allegations of the petition which was filed on the 15th June, 1905, are that the defendant, who was the owner of a certain piece of real property in the City of New Orleans, employed petitioners on the 11th day of April, 1905, to find a purchaser for her said property for the price and sum of $126,000; that on the 13th day of April, 1905, such a purchaser, in the person of S. V. Fornaris, was found, and who was ready, willing and able to purchase and who then and there made the usual deposit with petitioner of 10 per cent of the purchase price, to-wit, the sum of $12,600; that Mrs. Tilton was at once notified thereof; that the authority to offer said property for sale at said price, which authority was in writing, was together with the written acceptance thereof by Fornaris, at once duly recorded in the Conveyance Records of the Parish of Orleans; that said authority to sell contains the stipulation that petitioners are to be paid the sum of $2,000 for their services in obtaining such purchaser; that petitioners are informed that the balance of the purchase price has not been paid and that said Fornaris has demanded of petitioner the return of said money; that petitioners have asked for instructions from Mrs. Tilton as to the return of same, but that she has not authorized them to make said return, that they desire to be relieved of the holding of said money in order that the same may be paid to whom it may belong and, that having complied with their employment in securing a purchaser who is ready, able and willing to purchase on the terms and conditions stipulated in the written authority given to them by Mrs. Tilton, they are entitled to their compensation in the amount stipulated therein.

An order to that effect having been made by the judge *a qua* the deposit of $12,600 made by Fornaris and held by plaintiff was delivered to the Clrek of Court and passed into the judicial depository.

Mrs. Tilton first interposed the exception of no cause of action and upon this exception being referred to the merits, she then filed her answer which is simply a general denial.

Fornaris, though duly cited, made no appearance whatsoever and a preliminary default was taken against him.

There was judgment in favor of Mrs. Tilton rejecting plaintiff's demand and from that judgment plaintiffs appeal.

The facts are that Mrs. Tilton on the date stated therein signed and delivered to Mr. C. A. Tessier, a member of and acting for the plaintiff's firm, the following document:

April 11th, '05.

Mr. C. A. Tessier,

      New Orleans, La.

I authorize you to sell my property, Canal and University Place, for one hundred and twenty-six thousand dollars ($126,000.00) on terms of twenty-six thousand dollars ($26,000.00) or more cash, and the balance in first mortgage notes, and purchaser pays 1905 taxes—I to pay you two thousand dollars ($2,000.00) commission, and purchaser to agree to erect an hotel or apartment house. Possession October 1st, 1905.

(Signed) Caroline Tilton.

On the afternoon of the next day, and after some negotiations leading up to it, plaintiffs obtained from S. V. Fornaris, who was then the President of the Germania National Bank, his agreement to purchase the property on the terms stipulated in the above writing and to evidence his said acceptance Fornaris wrote across the face of the above writing the word "accepted," and affixed his signature thereto, and still further to bind and obligate him, he then and there deposited with plaintiff the sum of twelve thousand six hundred dollars. This document, with the acceptance of Fornaris, was at once duly recorded.

On the following morning plaintiffs addressed the following letter to Mrs. Tilton:

New Orleans, April 13th, 1905.

Mrs. Caroline Tilton,

      New Orleans, La.

Dear Madam: In accordance with your authority to our Mr. Tessier we have sold your property at the corner of Canal and University Place, measurements as per title, for the sum of one hundred and twenty-six thousand dollars ($126,000) on terms of $26,000 or more cash at option of purchaser and the balance in 5 per cent first mortgage bonds and purchaser pays 1905 taxes.

Kindly accept our thanks for the confidence you have placed in our firm, believe us,

Very respectfully yours,

(Signed) Denis, Danziger & Tessier.

On the 14th day of April, 1905, at 11:35 a. m., Mrs. Tilton handed to Mr. Tessier the following antedated letter:

New Orleans, April 12th, 1905.

Messrs. Denis, Danziger & Tessier,

     City,

Gentlemen:

I am just in receipt of your letter advising me that you had sold my property under authority of my letter to you.

I desire to say in reply, that it is necessary to conclude the sale by a written agreement, and that the agreement must contain a stipulation, as to when the apartment house or hotel is to be erected—as you know and I have told you, I should never consent to a sale of my house except with an agreement that I could continue to live upon the lot, and I have no fear that we can easily arrange that part.

     Yours truly,

        (Signed)    Caroline Tilton.

On the day that this letter was received by Mrs. Tessier (April 14, 1905) he and Mrs. Tilton discussed the subject of this sale and the former testifies that Mrs. Tilton made no objections at all to the transaction. "She seemed to be satisfied," testifies this witness, "after I told her it was Mr. Fornaris who was a gentleman who would carry out the arrangement about the building of an apartment house and not a cheap or trashy building. She seemed to be perfectly content when I left her at that time."

She then and there requested Tessier to send her a copy of the agreement and he at once complied, writing her the following letter:

New Orleans, April 14, 1905.

Mrs. Caroline Tilton,

     City.

In accordance with the promise of our Mr. Tessier we send you herewith copy of the agreement under which Mr. Fornaris purchased your property, corner Canal and University Place.

     Respectfully yours,

        (Signed)   Denis, Danziger & Tessier.

In this letter was enclosed a copy of Mrs. Tilton's authorization to plaintiffs to sell of date April 11th, together with the acceptance of Fornaris and the memorandum on the original docu-

ment which is shown to have been made on the date stated and which is in these words:

"Sold to S. V. Fonaris as per written authority, April 13th, 1905."

"(Signed)   C. A. Tessier."

On the 19th April, 1905, plaintiffs wrote to Mrs. Tilton requesting her to send them copy of title to the property in order to enable them to "turn them over to the purchaser."

On the 21st April, 1905, Mrs. Tilton answered this letter as follows:

"Replying to your recent communication requesting me to send you a copy of my title to my property, I beg to say that it would serve no purpose in handing you the deed until we have agreed upon certain conditions, viz: when the apartment house or hotel will be erected and what character of building it will be.

As you know, the document I signed for you was never intended to be a contract, but was simply to be an indication of my willingness to sell, provided my idea as to the erection of a hotel on my property could be realized.

"I shall decline to sign any act until these differences have been satisfactorily arranged."

On the 30th May, 1905, Mrs. Tilton wrote plaintiff as follows:

"Sometime having elapsed since the arrangement to sell my residence, 1106 Canal Street, and especially no deposit having been received by me to bind the sale, I hereby notify you that I wish to withdraw the property as I have made other arrangements."

Pending this period and for months thereafter, Fornaris, whom it is conceded was fully able to buy and pay the price, was ready and willing to purchase under the terms stipulated in Mrs. Tilton's written authorization to plaintiffs, but he was not willing to incorporate into the act of sale either Mrs. Tilton's ideas as to the erection of the hotel," or "when the apartment house or hotel was to be erected,' or that Mrs. Tilton "should continue to live upon the lot," or to sign agreements to that effect.

Thus matters dragged until the fall of the year when Fornaris fell ill and when on the 8th November, 1905, Mrs. Tilton made

no objection to his withdrawing the deposit and to his cancelling the registry of the agreement of promise of sale, both of which he did.

It also appears from the testimony, that Mrs. Tilton had previously offered this property for sale to the Boston Club, which paid and forfeited to Mrs. Tilton $1000 for the option she had given the Club, and that the option contained no stipulation whatsoever as to the building of an apartment house or hotel nor any of the conditions which she sought to impose on Fornaris; and that in January, 1906, she finally sold the property to Henry Denis for $182,000, the price originally offered being $180,000, but Mrs. Tilton insisted on adding $2,000 so as to protect her, as she stated, against her having to pay plaintiffs their commission in the Fornaris transaction. In this sale there is no stipulation for the building of an apartment house or hotel, nor that plaintiff was to "live on the lot," nor was any such asked or suggested. The sole contention of the appellee is that the authorization given by Mrs. Tilton of date April 11th, 1905—supra, together with the acceptance of the offer therein contained by Fornaris, do not evidence a contract of promise to sell—was not binding upon either Mrs. Tilton or Mr. Fornaris and was not susceptible of enforcement by either in a suit for specific performance, for forfeiture of the deposit, or for damages, forasmuch as the contract was vague, uncertain and indefinite: "First: As to the rate of interest to be paid on the mortgage notes representing the credit portion of the purchase price. Second: As to the time within which these notes should be paid. And third: As to the time within which the hotel or apartment house was to be built and as to what sort of a hotel or apartment house it should be."                   ..

It might be sufficient answer to the objection that the rate of interest and the maturities of the notes are not fixed in the authorization to offer the property for sale, to say that these objections at no time and in no manner, neither directly nor indirectly, and not even when she was represented by counsel who drafted her letters, *supra*, and who was seeking an adjustment and accommodation of the exactions of the appellee concerning the erection of an apartment house or hotel, were urged or suggested or made the ground of objection for the carrying out of the agreement. Appellee's refusal and repudiation of

the authorization given to plaintiffs was based, as we have seen by her letters supra, on entirely different grounds. It is a well-settled proposition of law that a litigant cannot be thus permitted to "mend his hole" by substituting after suit a reason for his non-execution of a contract which was not originally made and assigned by him as the occasion for the breach and which, as in the instant cause, is not even made in pleading, but is urged in argument only. But aside from this it was shown that the rate of interest was agreed on by the parties subsequent to the written acceptance and that Mrs. Tilton was so informed by Tessier personally and by the letter of plaintiffs of April 13, 1905, supra, and that she was fully advised as to the character and nature of the plan and arrangement of Fornaris to organize a stock company and to issue mortgage bonds, and it is further shown that in the furtherance of that plan Fornaris had the offer of assistance and help from her attorney who then had charge of her affairs.

So far as concerns the objection that the contract does not fix the time when the hotel or apartment house was to be built and as to what sort of a hotel or apartment house was to be built and as to what sort of a hotel or apartment house it should be, the answer is that Mrs. Tilton did not chose to stipulate in her authorization to plaintiffs to sell the property that the hotel or apartment house was to be built within a certain time, or within a time to be subsequently designated by her or to be mutually agreed on between her and the purchaser, and still less that the "sort of hotel or apartment" was to be such that her "ideas as to the erection of a hotel on my (her) property could be realized "as she wrote plaintiffs on the 21st April, 1905. Her own proposition was that the purchaser should "agree to erect an hotel or apartment house" on the property. This Fornaris agreed to do and as the evidence conclusively establishes would have done if the sale to him had been consummated. We are clearly of opinion that the writng in the instant cause evidenced a binding contract of promise of sale; that either party could have judicially enforced its specific performance or sued for damages for its breach and, assuredly, that Fornaris had his action against Mrs. Tilton for double the earnest he had given in the event it was she who receded from the promise and that Mrs. Tilton had her action against Fornaris

397

for the forfeiture of the earnest in the event he was the one who receded. C. C. 2436.

Capo vs. Bugldall 117 La. 992; Smith vs. Hurry, decided April 15, 1907, and not yet reported. As we have shown there never was any question as to the rate of interest to be paid nor the maturities of the notes. The sole differences between the parties were as to the time when the apartment house was to be built and what character of house it would be. "Those," testified the counsel for Mrs. Tilton, who then had charge of her affairs, "were the only differences between them." So that at last the case resolves itself to the question whether the written offer to sell was not susceptible of enforcement simply because it did not stipulate for a time within which the hotel was to be built nor the sort of a hotel it was to be. We know of no law which required her to be more specific, if she did not desire so to be. She seemed content that the purchaser should agree "to erect an hotel or apartment house." This the purchaser agreed to do. There was not the slightest intention in her proproposal that she should have the fixation of the time within the building should be constructed nor its style or character. The purchaser was simply to agree to erect the building and under the condition expressed by her, her offer was accepted. There is no suggestion of bad faith on the part of Fornaris. It is not doubted that he would do as he had agreed to do; but he was unwilling, as we are persuaded he had the right to be, to enter into a new, separate and distinct contract of promise of sale whereby he was to be obligated to build the hotel within such time as Mrs. Tilton might suggest and in accordance with such plans and specifications as she might adopt, so that her "ideas as to the erection of a hotel on my (her) property could be realized."

It can not be disputed that the plaintiffs were employed to make the sale; that they found a purchaser able, willing and ready to buy, promised and agreed to take the property on the terms set forth in the written authorization of the owner and that it was from no fault of the plaintiffs, but from an entirely independent cause, to-wit: the refusal of the owner to complete the contract in accordance with the terms embraced in the offer to sell, that the contract was not consummated.

In such a case the law is well settled that the broker is entitled to his commission.

In a recent cause decided by this Court on the 20th day of May, 1907, entitled Loyacano vs. Suc. Thompson, No. 4214, we announced the doctrine that where a party employs a broker to effect a sale and the broker finds a purchaser who promises to take the property upon the terms contained in the original authorization given to the broker, the latter is entitled to his commissions though the party afterwards releases the buyer and sells on different terms. To this effect are numerous decisions of the Supreme Court of this State, 6 A. 26; 6 A. 398; 110 La. 507; Lacket Land, etc. Co. vs. G. M. Brown J. No. 16445 (not yet reported) as well as those of our sister states.

The latter are summarized in the Am. & Eng. Ency. of Law, Vol. 4-2nd Ed., p. 972, and finds its expression in the text as follows: "A broker is entitled to his commissions if he has faithfully performed his part of the transaction and from no fault of his own, but from entirely independent causes, as by refusal and inability of the principal to complete the contract, the contract is not consummated, the broker will be entitled to his commission. In the case of a broker employed to negotiate a sale, his duty is fully performed when he has procured a purchaser ready and able to buy upon terms stipulated, and he is entitled to his commissions whether the sale is effected or not. Mechen on Agency states the rule thus: "If it be found that the agent has done *all that he undertook to do,* his right to compensation is complete, and he cannot be deprived of it, because the principal then fails to avail himself of the benefits of the act or refuses to do what he had agreed to do upon performance. P. 612.

In Burling vs. Gunther 12 Daly 6, it was held that "to entitle himself to commissions, a real estate broker is not bound to procure a binding contract. If he finds a party ready and willing, the commission is earned, although the principal, by his laches or default, permits the trade to fall through."

"If the owner of property employs a broker to sell *on stated terms* and *conditions,* or to send to the owner a customer, and the broker sends to the owner a customer who is ready and offers to buy on the terms and conditions stated, the broker

earns his commission, whether the owner sells or not." Gaty vs. Foster, 18 Mo. App. 639.

"The fact that the title of the seller is defective is no defense to an action by a broker for his commission where he has procured a purchaser ready and willing to buy the property *upon the terms offered* by the seller, the defect in the title preventing the consummation of the sale." Gonzales vs. Broad, 57 Cal. 24.

In McGavock vs. Woodlief, 20 How. (U. S.) 277 a case arising under a Louisiana contract of mandate the Court held: "Where a broker employed to sell real estate finds a purchaser in a situation and ready and willing to complete the purchase, on the terms agreed on, he will be entitled to his commission, though the vendor refuses to go on and perfect the sale."

We are clearly of opinion that the plaintiffs have earned their commission and are entitled to a judgment therefor against the defendant.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby avoided, set aside and reversed and it is accordingly ordered, adjudged and decreed that plaintiffs Denis, Danziger & Tessier have judgment against Mrs. Caroline Tilton in the sum of two thousand dollars with legal interest thereon from April 13th, 1905, until paid and their costs of both Courts.

June 17, 1907.

Dufour, J., dissents.

Rehearing refused June 28, 1907.

Writ granted by Supreme Court, Aug. 3, 1907.

Nov. 4, 1907, decision of Supreme Court, annulling judgment of Court of Appeal.